

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann
~~JOHN BEN SHEPPERD~~x
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4365
Re: Construction of allocations to
and appropriations out of the
Old Age Assistance Fund

Your letter of June 11th requesting our opinion on
two questions relating to the Old Age Assistance Fund reads
as follows:

"OLD AGE ASSISTANCE FUND EXPENDITURES

"Senate Bill 490 (Article 7083a), Forty-seventh Legis-
lature, amending Section 2, Article XX, House Bill 8 of
the Regular Session of the Forty-seventh Legislature
commonly known as the Omnibus Tax Bill, has to do with
the allocation of the revenues derived from certain occupa-
tion and gross receipts taxes, and reference is particularly
made to the following portion of Senate Bill No. 490:

"'(4) After the above allocations and payments have
been made from such Clearance Fund, there shall be paid
therefrom into the Old-Age Assistance Fund on the first
of each month, such su, which, taken with other sums paid
into such Old-Age Assistance Fund by virtue of other laws
still in force, will equal a total of One Million Seven
Hundred Fifty Thousand ($1,750,000.00) Dollars, and such
sum is hereby appropriated for the use provided by law
for such Old-Age Assistance Fund. Should such payments into
the Old-Age Assistance Fund by virtue of other laws exceed
One Million Seven Hundred Fifty Thousand ($1,750,000.00)
Dollars, in any one month, then not more than One Million
Seven Hundred Fifty Thousand ($1,750,000.00) Dollars of
such shall be expended for old-age assistance in such
month and the remainder in excess thereof shall be with-
held until the succeeding month or months and be taken
into consideration in allocating funds from the Clearance
Fund to the Old-Age Assistance Fund, and the amount paid
in from the Clearance Fund into the Old-Age Assistance
Fund shall be reduced accordingly to the end that a sta-
tionary sum of One Million Seven Hundred Fifty Thousand
($1,750,000.00) Dollars per month be available from State
funds for old-age assistance; . . .'

"In carrying out the provision referred to above it has been the practice of this department to make a transfer on the first day of each month from the Omnibus Clearance Fund to the Old-Age Assistance Fund of an amount which, when added to the cash balance then in the Old-Age Assistance Fund together with receipts to the fund by virtue of other laws will equal $1,750,000.00. In other words, on the first day of each succeeding month the balance is raised back to the $1,750,000.00.

"The balance in the Old-Age Administration Fund, which fund is considered a part of the Old-Age Assistance Fund, although carried in a separate account, is also considered in arriving at the amount to be transferred when bringing the balance in the Old-Age Assistance Fund up to the $1,750,000.00. This Old-Age Administration Account is maintained by transferring sums from the Old-Age Assistance Fund in amounts as and when requested by the Public Welfare Department. The law does not prescribe this separate account, but the fact that the legislature appropriates out of the Old-Age Assistance Fund certain amounts for administration and the law further limits the administrative cost to 3% of assistance paid makes it necessary to separate the accounts in order to control the expenditures.

"During each month there are a number of warrants cancelled, causing a credit to the fund account and thereby raising the balance. Practically all of the cancellations are of warrants which were issued in some previous month and against that previous month's allotment of money. The most common reason for these cancellations is that the pensioner dies before receiving his warrant. The warrants are returned, cancelled and credited back to the fund in some subsequent month, causing that month's total credits to exceed the 'stationary sum' of $1,750,000.00

"Until recently the total warrants issued against these funds in a single month have not amounted to the $1,750,000.00, thereby leaving a balance as great as or greater than the amount of cancellations to be taken into consideration in allocating the funds for the following month when bringing the balance up to the required $1,750,000.00.

"Now that the Old-Age Assistance grants and the cost of administration together have reached and might exceed the $1,750,000.00 in a given month, the question arises as to the use of the credits caused by the cancellation of assistance warrants. I therefore request your answer to the following questions:

"1. Is the Comptroller accomplishing the purpose of the provision of the Act quoted in following the practice of considering the cash balance at the close of one month in arriving at the amount to be transferred on the first of each month, even though there might be an undetermined amount of administrative expense accounts outstanding and unpaid at the time?

"In answering this question please bear in mind that there are always some unpaid accounts while on the other hand there are current expenditures for supplies which are to be used throughout the future months. Also, that one statute (the Omnibus Tax Bill) produces the money while another authorizes the expenditures.

"2. Is the Comptroller authorized to issue during any one month warrants for the payment of old-age assistance and administration combined totaling more than $1,750,000.00 if the amount in excess of $1,750,000.00 is not greater than the amount of cancelled warrants credit described above?

"I shall be glad to have you confer with representatives of this department and the Public Welfare Department if you wish further detailed information about the operation of the accounts before making your reply."

You quote at the beginning of your letter that portion of Senate Bill 490, Acts 47th Legislature, upon the construction of which depends the answers to your questions.

While Senate Bill 490 amends section 2 of Article XX of House Bill 8 (Omnibus Tax Bill) of the same session, that portion of Senate Bill 490 which you quote, repeats unchanged the same provisions as contained in House Bill 8. The legislative intent as to said provision, therefore, may be regarded as unchanged from House Bill 8, so that we cannot look to other portions of S. B. 490 for help in ascertaining the legislative intent embodied in the provisions under consideration.

As now constituted, payments into the Old Age Assistance Fund are made from two sources:

(1) The clearance fund and (2) certain taxes which are paid directly into the Old Age Assistance Fund. These latter are three-fourths of the revenues collected from taxes on (a) coin-operated machines, (b) amusements, (c) wine, beer and liquor stamp taxes and (d) all the revenues from wine, beer and liquor permits.

The revenues from these tax sources, particularly as to beer, wine and liquor permits, vary considerably from month to month. In the quoted statute, these revenues are described

as "other sums paid into the Old-Age Assistance Fund by virtue
of other laws still in force." The undoubted purpose of the
quoted provision was to assure that there be available "a
stationary sum of $1,750,000.00 per month", irrespective of
fluctuations in the monthly receipts from the taxes which have
been specifically allocated to the Old Age Assistance Fund.
This purpose is accomplished by the first sentence of said sub-
section (4), which reads:

"After the above allocations and payments have been
made from such Clearance Fund, there shall be paid there-
from into the Old-Age Assistance Fund on the first of
each month, such sum, which, taken with other sums paid
into such Old-Age Assistance Fund by virtue of other laws
still in force, will equal a total of One Million Seven
Hundred Fifty Thousand ($1,750,000.00) Dollars, and such
sum is hereby appropriated for the use provided by law
for such Old-Age Assistance Fund."

This sentence assures that $1,750,000.00 will be
paid into the Old Age Assistance Fund on the first of each
month. It does not limit the expenditures from the fund to
such amount each month. Nor does it provide that unexpended
balances from preceding months in the Old Age Assistance Fund
shall be considered in determining the amount which shall be
paid in from the clearance fund. The $1,750,000.00 paid into
the Old Age Assistance Fund each month consists only of the
total revenue derived from the "other laws" during the preced-
ing month, plus whatever additional sum may be necessary from
the clearance fund to make a total of $1,750,000.00 And such
sum is to be paid into the Old Age Assistance Fund on the first
of every month, irrespective of unexpended balances from previous
months remaining in the fund.

The second sentence of the quoted provision does not
impose a general limitation upon the amount which may be expended
each month from the fund. A careful reading will show that the
entire sentence applies only in those months in which the revenues
from "other laws" exceed $1,550,000.00:

"Should such payments into the Old-Age Assistance
Fund by virtue of other laws exceed One Million Seven
Hundred Fifty Thousand ($1,750,000.00) Dollars, in any
one month, then not more than One Million Seven Hundred
Fifty Thousand ($1,750,000.00) Dollars of such shall be
expended for old-age assistance in such month, and the
remainder in excess thereof shall be withheld until the
secceeding month or months and be taken into consideration
in allocating funds from the Clearance Fund to the Old-Age
Assistance Fund, and the amount paid in from the Clearance
Fund into the Old-Age Assistance Fund shall be reduced
accordingly to the end that a stationary sum of One Mil-
lion Seven Hundred Fifty Thousand ($1,750,000.00) Dollars
per month be availabel from State funds for old-age

Actually, the revenue from "other laws" have never exceed, nor even approached $1,750,000.00 in any one month, so that this provision has never become operative. Even if it should become operative, it would limit the expenditure out of the Old Age Assistance Fund in that month to $1,750,000.00 only as to "such" money as was paid in that month. It would not forbid expending in addition to "such" $1,750,000.00, other monies which might be in the Old Age Assistance Fund by virtue of unexpended balances left over from prior months.

The final course, "to the end that a stationary sum of One Million Seven Hundred Fifty Thousand ($1,750,000.00) Dollars per month be available", is to be construed, we believe, not to prescribe the amount which may be expended, but the amount which is to be allocated to the Old Age Assistance Fund each month. Thus construed, the entire provision under consideration is an allocation of monies into the Old Age Assistance Fund, rather than an appropriation thereof. We find the appropriation of these funds in the Departmental Appropriation Bill, S. B. 423, Acts 47th Leg., in the following language:

"All incomes allocated or transferred to the Old Age Assistance Fund by H. B. No. 3, Acts of the 47th Legislature, Regular Session, or other revenue laws, for the purpose of providing and administering old-age assistance, is hereby appropriated for each of the fiscal years ending August 31, 1942, and August 31, 1943, to the State Department of Public Welfare for old age assistance payments and for salaries, equipment, supplies, travel, maintenance and contigent expenses necessary in the extension of said old-age assistance."

This clearly constitutes an appropriation for "each of the fiscal years", and cannot be construed as being "each of the fiscal years", and cannot be construed as being an appropriation on a monthly basis. H. B. 8 and S. B. 490 provide for the allocation to the Old Age Assistance Fund of $1,750,000.00 each month, and the above provision of S. B. 423, appropriates all the monies so allocated for each of the two fiscal years.

It follows from the foregoing analysis that there may be expended from the Old Age Assistance Fund in any month not only the $1,750,000.00 allocated to said fund on the first of said month, but in addition thereto, such unexpended balance as there may be in the fund by virtue of expenditures during preceding months of the fiscal year having been below $1,750,000.00.

Turning now to a consideration of your two questions. Your first question is answered in the negative; i. e., we believe that you should not consider the cash balance at the close of one month (that is, the unexpended portion of the $1,750,000.00 allocated to the fund for that month) in arriving at the amount to be transferred from the clearance fund on the first of each month. The amount to be transferred from the clearance fund on the first of the month is the difference

between $1,750,000.00 and the amount which has been paid into the old age assistance fund from "other laws" during the preceding month, plus any balance carried over because of an excess over $1,750,000.00, which may have been paid into the fund by virtue of other laws in prior months.

We answer your second question in the affirmative; i. e., you may issue during any one month warrants for the payment of old age assistance and administration combined totaling more than $1,750,000.00, if there is an unexpended balance in the fund from prior months to cover such excess. The cancelled warrant credit to which you refer may be one of the sources of such unexpended balance of funds previously allocated.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
    Walter R. Koch
    Assistant

WRK:amm:ba

APPROVED JUL 3, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS